**COOK, Plaintiff-Appellee, v. CRABILL et, Defendants-Appellant.**

Ohio Appeals, Second District, Greene County.

No. 543.   Decided May 6, 1959.

Wead & Aultman, Xenia, for plaintiff-appellee.

Miller & Finney, Marshall & Marshall, Xenia, for defendants-appellant.

## OPINION

By KERNS, J:

This is an appeal on questions of law and fact from the Common Pleas Court of Greene County, Ohio.

The petition originally filed by the plaintiff-appellee, Alma Hilt Cook, sought to have certain property partitioned. An answer and cross-petition were filed by defendants-appellant asking for the construction of the will of David Hilt and for other relief. A reply and answer were filed wherein the plaintiff-appellee joined in the prayer of the defendants-appellant for the construction of the will of the decedent, David Hilt.

The plaintiff-appellee, Alma Hilt Cook, is the adopted daughter of Henry Hilt, who was the son of David Hilt. The defendants-appellant are the natural lineal descendants of David Hilt.

The plaintiff-appellee was adopted by Henry Hilt on February 7, 1912. The will of David Hilt was executed on January 24, 1925, and he died on April 1, 1925. Henry Hilt died on November 3, 1952, leaving his adopted daughter, Alma Hilt Cook, as his survivor and sole heir at law.

The fifth item of the will of David Hilt reads as follows:

"I give, devise and bequeath to my son Henry Hilt and to my daughter Lizzie Crabill my home place consisting of 148 acres of land, more or less, and in case of the death of either without living issue then the equal share of the deceased shall revert to my living children or their heirs in equal amounts."

At the outset, it is deemed necessary to determine the nature of the estate which Henry Hilt took from his father, David Hilt, under the language above quoted. The plaintiff-appellee contends that said language devises the undivided one-half of the farm to Henry Hilt in fee simple absolute. However, this contention appears vulnerable. The language undoubtedly contemplates the taking of the property and the enjoyment thereof by Henry Hilt, but the second clause of said provision also clearly discloses that the title devised to Henry Hilt was to be a determinable or qualified fee, not passing absolutely in fee simple, but made subject to the contingency that "in case of the the death of either without living issue then the equal share of the deceased shall revert to my living children or their heirs in equal amounts." Had the testator intended to devise the property without qualification, he could very easily have done so by concluding the provision after the first independent clause thereof. However, having expressly superadded the condition of reverter in the second clause, a determinable or qualified fee was created.

This conclusion merely recognizes the fundamental rule of construction that the language deliberately used in a will is presumed to have been placed there for a purpose and cannot arbitrarily be ignored.

For the rule of property involved, see the case of **Piatt v. Sinton, 37 Oh St 353,** where the second branch of the syllabus reads as follows:

"Where there is a devise in fee, with a provision in the will that in case the devisee should die without leaving any legitimate heirs of her body, then the estate should go over to persons named, the fee taken by the first devisee is determinable only on the contingency of her dying without leaving such heirs living at the time of her death. **Niles v. Gray (12 Oh St 320),** followed."

See also **Collins v. Collins, 40 Oh St 53,** and Restatement of the Law of Property, Section 267.

The plaintiff-appellee contends that the testator, David Hilt, referred to the date of his own death when he used the explanation "and in the case of the death of either without living issue," in the fifth item of his will, and therefore, since Henry Hilt and Lizzie Crabill were both living at the time of the death of David Hilt, they both took title in fee simple absolute at that time. While the authorities of many jurisdictions would look favorably upon such contention, it is completely shattered in Ohio by reference to the case of **Steinbrenner v. Dreher, 140 Oh St 305,** which approves and follows **Briggs v. Hopkins, 103 Oh St 321,** and **Ohio National Bank v. Harris, 126 Oh St 360.** The first branch of the syllabus of the Steinbrenner case reads as follows:

"When a testator wills a specified part of his property equally to designated beneficiaries and provides that in the event of the death of either without issue that one's share shall go to the others, the phrase 'in the event of the death of either without issue' has reference to the time of the death of the beneficiary, unless a contrary intention on the part of the testator is plainly apparent."

See also **Parish's Heirs v. Ferris, 6 Oh St 563,** and **Gaston v. Moore, 38 Oh Ap 403.**

We must therefore determine what the testator meant when he used the term "living issue" in the fifth item of his will. And the answer depends, of course, upon his intention. The term "issue" normally designates descendants and according to Bouvier's Law Dictionary, Century Edition, includes "all persons who have descended from a common ancestor."

However, this restricted definition becomes oblivious after reading many applicable cases. As stated in the case of **Cochrel v. Robinson, 113 Oh St 526,** at page 533:

"The word 'issue' has several meanings in the law of decedents' estates. What its meaning may be in a given case depends upon the circumstances under which it is used, whether it be found in a will, a contract, or statute. Its primary signification imports descendants and has to do with the blood of the ancestor, but by general use the word 'issue' has often a wider signification and may include not only 'children' but 'grandchildren,' 'descendants,' and 'adopted children.'

"In other jurisdictions the word 'issue,' in the statute of descents, does not limit the right of inheritance to lawful children, but is held to include children whose relation depends on statutory enactment, such as a child by adoption or a designated heir."

The opinion then cites many authorities to show that the word "issue" is held to include children whose relation depends upon statutory enactment, such as a child by adoption or a designated heir.

At this point it is well to recall that the plaintiff-appellee was adopted in 1912, or almost thirteen years before the testator executed his will. During these years, the testator lived near his son, Henry, and was able to observe the mutually acknowledged relationship of father and daughter which existed between his son and the plaintiff-appellee. There is nothing in the will to indicate that David Hilt disapproved of the adoption of plaintiff-appellee by his son. On the contrary, he named his son as one of the executors of his will, with full knowledge of the adoption, thus expressing a continued confidence in his judgment. And the fact that Henry Hilt's sister, Lizzie Crabill, was to be affected in the same manner by the language used in the fifth item of the will of David Hilt lends favor to a belief that the term "living issue" was not used purposely with the design to exclude the adopted daughter of Henry Hilt because Lizzie Crabill was the mother of a natural-born child at the time of the execution of the will.

Although the instant case involves testamentary rather than legislative intent, applicable statutes may be helpful in determining the testamentary intent. The presumption exists that the testator in drawing his will has knowledge of the law which will control the distribution of his estate (Flynn v. Bredbeck, 147 Oh St 49, 41 O. Jur., 649, Section 520).

Under the language used in the fifth item of his will, David Hilt must therefore be charged with the knowledge that the estate devised to his son, Henry, would be determinable upon the death of said son, and that the legal status of the plaintiff-appellee would be fixed at that time.

Sec. 8004-13 GC, 124 Ohio Laws, 178, was effective at the time of Henry Hilt's death and provided that "for all purposes under the laws of this state, including without limitation all laws and wills governing inheritance of and succession to real or personal property and the taxation of such inheritance and succession, a legally adopted child shall have the same status and rights, and shall bear the same legal relationship to the adopting parents as if born to them in lawful wedlock and not born to the natural parents."

Said statute provides further that "for the purpose of inheritance to, through, and from a legally adopted child, such child shall be treated the same as if it were the natural child of its adopting parents, and shall cease to be treated as the child of his natural parents for the purposes of intestate succession."

The plaintiff-appellee is undoubtedly "issue" within the contemplation of this statute.

By the terms of an earlier version of the statute (Sec. 10512-19 GC), which was much narrower in scope, the Supreme Court held that the word "issue" embraces an adopted child. (Flynn v. Bredbeck, supra.)

It reasonably follows therefore that the plaintiff-appellee is living issue within the meaning of the will of David Hilt.

The defendants-appellant contend that the law as it existed at the time of the death of the testator should prevail.

**Sec. 8030 GC, 109 Laws of Ohio, 179,** was in effect when the will of David Hilt was executed and remained in effect until after he died. Under the provisions of the adoption statute at that time, the adopted child was entitled to inherit from the adopting parents the same as if born to them in lawful wedlock, but' there was no provision for the adopted child to inherit through the adopting parents.

Even if we were to indulge in the presumption that said statute is applicable in the instant case, we still could not conclude that the plaintiff-appellee was not looked upon as "living issue of Henry Hilt" because the testator had observed this parent-child relationship for thirteen years at the time of the execution of his will and is presumed to have known that the plaintiff-appellee was entitled to inherit from Henry Hilt.

In the case of **Smith v. Hunter, 86 Oh St 106,** the court looked favorably upon an adopted child although there was no adoption statute in effect at the time of the execution of the will of the decedent. The syllabus of said case reads as follows:

"1. The rule that in the interpretation of a will the testator must be presumed to have meant what he said requires that a devise of a remainder 'to the heirs at law' of a beneficiary for life be regarded as including an adopted child of the beneficiary, although there was not, when the will was executed, any statute for the adoption of children.

"2. In such case it is not required that the testator appears to have had the specific intention that the succession should be to an adopted child of the beneficiary for life if it appears that such child, it having been adopted in pursuance of laws enacted before the succession, is within the terms by which the testator declared his general intention."

We have examined item three of the will before us and recognize the merit to the argument that all of the natural grandchildren have been acknowledged therein with a specific bequest, whereas the plaintiff-appellee is not included. However, even if we assume that the testator did not consider the plaintiff-appellee as a "granddaughter," it does not necessarily follow that she was not looked upon as "issue" of Henry Hilt. The doubtful import of this provision cannot change the language of the fifth item of the will.

The testator also expresses a desire in his will that his children share equally in his real estate. This expressed intention would not be consistent with an unwarranted restriction upon the descent of the share of Henry Hilt.

We have carefully examined the many cases cited by counsel, and find that the facts before us are not favored with conclusive precedent. However, the language of the will shows no intention that the plaintiff-appellee be disinherited, and all legal presumptions are in her favor.

We are therefore of the opinion that the plaintiff-appellee is "living issue" of Henry Hilt and is entitled to the real estate in question.

A decree may be drawn accordingly.

WISEMAN, PJ, CRAWFORD, J, concur.